IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DONALD ADKINSON and
KERRY WIMLEY, Individually
And on Behalf of All Others
Similarly Situated                                                    PLAINTIFFS


v.                                   Case No. 4:19-cv-4007


TIGER EYE PIZZA, LLC and
KEN SCHROEPFER                                                       DEFENDANTS

## ORDER

Before the Court is Plaintiffs Donald Adkinson and Kerry Wimley's Motion for

Conditional Certification, for Approval and Distribution of Notice and for Disclosure of Contact

Information.  (ECF No. 17).  Defendants Tiger Eye Pizza, LLC and Ken Schroepfer have

responded.  (ECF No. 35).  Plaintiffs have replied.  (ECF No. 43).  The Court finds the matter ripe

for consideration.

## I.  BACKGROUND

On April 23, 2019, Plaintiffs filed this action, seeking relief pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and the Arkansas Minimum Wage Act

("AMWA"), Ark. Code Ann § 11-4-201, *et seq.*  Plaintiffs allege that they were formerly employed

by Defendants as hourly paid delivery drivers at Defendants' pizza stores in Texarkana, Arkansas

and Texarkana, Texas.  Plaintiffs claim that Defendants failed to pay them, and others similarly

situated, proper minimum wage and overtime compensation.  Plaintiffs' complaint indicates that

they bring their FLSA claims for collective-action treatment on behalf of all others similarly

situated.  Plaintiffs likewise indicate that they bring their AMWA claims for Federal Rule of Civil

Procedure 23 class-action treatment on behalf of all others similarly situated.[1]

In the instant motion, Plaintiffs ask the Court to certify, pursuant to the FLSA, the following collective: "All Delivery Drivers employed by Defendants since January 23, 2016." (ECF No. 17, p. 2). Plaintiffs also ask for a ninety-day period to distribute notice and consent forms and for potential plaintiffs to opt into this case. Plaintiffs further ask the Court to order Defendants to provide the names, current and/or last known mailing addresses, and cell phone numbers, or alternatively email addresses, of potential opt-in plaintiffs. Plaintiffs ask the Court to authorize a distribution plan involving notice being delivered to potential opt-ins via U.S. mail, text message, and alternatively, email for potential plaintiffs who have no known cell phone number, with a follow-up email being sent three weeks after the delivery of initial notice. Defendants oppose the motion.

## II.  DISCUSSION

The Court is faced with two tasks. First, the Court must determine whether conditional certification of the proposed collective is proper under the FLSA. Second, if the Court finds that conditional certification is appropriate, the Court must outline the correct means of providing notice to potential opt-in plaintiffs and set procedures by which a potential collective member may opt in.

### A. Whether Conditional Certification is Proper

Because Plaintiffs bring a collective action pursuant to the FLSA, they must use the opt-in mechanism under 29 U.S.C. § 216(b) for joining members of the proposed collective as opposed to the opt-out procedures set forth in Federal Rule of Civil Procedure 23. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 939 (W.D. Ark. 2007). Under the FLSA, an action may

---

[1] Plaintiffs have not asked for certification of a Rule 23 class action. Thus, the remainder of this order will concern only whether Plaintiffs' FLSA claims are appropriate for collective treatment.

be brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought under section 216(b) are "intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Resendiz-Ramirez*, 515 F. Supp. 2d at 940 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

"Ultimately, certification of a collective action will depend on whether the named plaintiffs are similarly situated to the [collective members]." *Murray v. Silver Dollar Cabaret, Inc.*, No. 5:15-cv-5177-PKH, 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017). Section 216(b) does not provide a standard for courts to utilize when determining whether the plaintiff and the collective members are "similarly situated," and the Eighth Circuit has not yet enunciated a standard. *Id.* However, the prevailing approach within this circuit for collective action certification under section 216(b) is the two-step process set forth in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). *Id.* (citing *Resendiz-Ramirez*, 515 F. Supp. 2d at 940).

The two-stage process for collective-action certification is divided into: (1) the notice stage; and (2) the opt-in, or merits stage. *Resendiz-Ramirez*, 515 F. Supp. 2d at 941. During the notice stage, the Court decides—usually based only on the pleadings and affidavits that have been submitted—whether notice should be given to potential plaintiffs. *Mooney*, 54 F.3d at 1213. If the Court allows for notification, the Court typically creates a conditional certification of a representative class and allows notice to be sent to the potential opt-in plaintiffs. *Id.* at 1214.

At the second stage of the certification process, the Court must decide whether the action should be maintained through trial. *Resendiz-Ramirez*, 515 F. Supp. 2d at 940. Typically, the second stage is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete. *Id.* If the Court decides to decertify the class, the opt-in plaintiffs

are dismissed from the suit without prejudice and the case proceeds only for the class representatives in their individual capacities. *Id.*

This case is presently at the first stage of the two-stage certification process. At this initial stage, the Court does not make findings on legal issues or focus on whether there has been an actual violation of the law. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106-07 (10th Cir. 2001). Further, at this stage, the Court does not make credibility determinations or resolve contradictory evidence presented by the parties. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1099 n.17 (11th Cir. 1996). Instead, the Court determines whether, under the lenient standard of the notice stage, the named plaintiffs, through pleadings and affidavits, have demonstrated that they are "similarly situated" to the potential collective members. *See* 29 U.S.C. § 216(b); *Thiessen*, 267 F.3d at 1106-07.

Although the FLSA does not define the term "similarly situated," it typically requires a showing that the plaintiff and potential collective members were victims of a common decision, policy, or plan of the employer that affected all collective members in a similar fashion. *See Thiessen,* 267 F.3d at 1106-08; *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007). Further, the "similarly situated" determination requires only a modest factual showing and does not require the plaintiff and the potential collective members to show that they are identically situated. *See Harris v. Express Courier Int'l, Inc.*, 5:16-CV-05033, 2016 WL 5030371, at *3 (W.D. Ark. Sept. 19, 2016); *Kautsch*, 504 F. Supp. 2d at 689-90. This is not an onerous burden, but Plaintiffs nonetheless must show "some identifiable facts or legal nexus . . . bind[ing] the claims so that hearing the cases together promotes judicial efficiency." *Murray*, 2017 WL 514323, at *2 (internal citation omitted). District courts within the Eighth Circuit consider a

variety of factors when determining whether plaintiffs and proposed class members are "similarly situated" at the notice stage, including the following:

> (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker[;] and (5) the extent to which the acts constituting the alleged violations are similar.

*Harris v. Express Courier Int'l, Inc.*, 5:16-cv-5033-TLB, 2016 WL 5030371, at *3 (W.D. Ark. Sept. 19, 2016).

Defendants mount a two-pronged attack on Plaintiffs' motion for conditional certification. First, they attack the viability of Plaintiffs' unsworn declarations submitted in support of conditional certification.[2]  Second, they argue that the facts of this case are such that conditional certification is improper.  The Court will address each argument in turn.

**1. Declarations**

As a preliminary matter, the Court must address Defendants' "Objections and Motion to Strike Declarations," in which they argue that the Court should strike or otherwise refuse to consider Plaintiffs' unsworn declarations that were submitted in support of conditional certification.  (ECF No. 38).  Defendants argue that Plaintiffs' declarations are not competent evidence because they contain certain statements that are not based on Plaintiffs' personal knowledge, that are hearsay, that are irrelevant, or that are conclusory and speculative.

The Court cannot grant the relief Defendants request with respect to Plaintiffs' declarations because the objections/motion to strike was not filed on the docket as a motion and, thus, there is

---

[2] Parties moving for conditional collective action certification typically provide affidavits in support of the request. *See, e.g.*, *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010).  An unsworn declaration may serve as an alternative to a formally attested affidavit if it is signed, dated, and states "under penalty of perjury" that the information within is true and correct.  *Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016). Plaintiffs' motion for conditional certification is accompanied by their separate unsworn declarations.

currently no pending, formal request for relief upon which the Court may act. *See* Fed. R. Civ. P. 6(b)(1) ("A request for a court order must be made by motion."). However, even if Court construes the objections as a formal motion to strike, the Court would decline to grant the relief sought for the reasons discussed below.

Defendants ask the Court to strike Plaintiffs' declarations. Defendants do not identify the procedural mechanism under which they move to strike, but the Court assumes that they move under Federal Rule of Civil Procedure 12(f), which authorizes courts to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). The Federal Rules of Civil Procedure define a "pleading" as: (1) a complaint; (2) an answer; (3) a reply to a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; and (6) a third-party answer. Fed. R. Civ. P. 7(a). "No other paper will be considered a pleading except those specifically named in Rule 7(a)." *George v. Davis*, No. 3:13-cv-3058-PKH, 2015 WL 463114, at *1 (W.D. Ark. Feb. 4, 2015). Thus, "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the [Rule 12(f)] motion to strike." *Id.*

Defendants do not direct their Rule 12(f) motion toward a pleading. Therefore, it would be procedurally improper to strike Plaintiffs' declarations under Rule 12(f), and the Court declines to do so. However, even assuming *arguendo* that Defendants move not under Rule 12(f), but under some other unspecified procedural mechanism, the Court would nonetheless decline to strike the declarations because motions to strike propose a drastic remedy and, thus, are viewed with disfavor and are infrequently granted. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

Alternatively, Defendants ask the Court to refuse to consider Plaintiffs' declarations because they do not constitute admissible evidence as they contain statements that are not based on Plaintiffs' personal knowledge, that are hearsay, or that are conclusory and speculative.

Plaintiffs argue that their affidavits are valid and sufficiently demonstrate that conditional certification is proper.

"The Federal Rules of Civil Procedure do not create a standard for reviewing affidavits submitted in support of motions other than a motion for summary judgment." *Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-cv-0451-BBC, 2007 WL 4560541, at *10 (W.D. Wis. Dec. 19, 2007). In an FLSA context, some courts decline to consider any part of a plaintiff's affidavit that does not constitute admissible evidence. *See Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866 (S.D. Ohio 2005) (rejecting portions of an affidavit that constituted inadmissible hearsay). Conversely, other courts' treatment of affidavits resembles the Eighth Circuit's handling of affidavits at the summary judgment stage, in which the proper determination is not whether the evidence itself is admissible, but rather whether it *could* be presented at trial in an admissible form. *See White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (considering hearsay in the plaintiff's affidavit because, "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial"); *Coan v. Nightingale Home Healthcare, Inc.*, No. 1:05-cv-0101-DFH-TAB, 2005 WL 1799454, at *1 n.1 (S.D. Ind. June 29, 2005) (same); *see also Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (stating the standard for admissibility of affidavits at the summary judgment stage is whether the evidence could be presented at trial in an admissible form).  Multiple courts within the Eighth Circuit have followed the latter approach, declining to strike or exclude hearsay found in affidavits at the conditional certification stage. *See, e.g.*, *Bowman v. Doe Run Res. Corp.*, No. 4:13-cv-2519-CDP, 2014 WL 3579885, at *4 (E.D. Mo. July 21, 2014); *Waters v. Kryger Glass Co.*, No. 09-1003-CV-W-SOW, 2011 WL 13290713, at *3 (W.D. Mo. Jan. 12, 2011); *West v. Border Foods, Inc.*, No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *6 (D. Minn. July 10, 2006).

The Court is inclined to agree and finds the latter approach the more prudent of the two, as it seems unreasonable to impose a higher evidentiary standard for affidavits at the lenient conditional certification stage than would later be imposed at the summary judgment stage.  As the Eighth Circuit has explained, "a decision to certify a class is far from a conclusive judgment on the merits of the case, [so] it is of necessity . . . not accompanied by the traditional rules and procedure applicable to civil trials."  *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (internal quotation marks omitted).  "Although *Zurn* related to a Rule 23 class certification action, these statements are particularly true of a conditional class certification of an FLSA action.  A conditional class certification is by its very nature 'conditional' and subject to revision by a decertification motion that often follows."  *Lindsay v. Wells Fargo Advisors*, LLC, No. 4:12-cv-0577-JAR, 2013 WL 943736, at *5 (E.D. Mo. Mar. 11, 2013) (applying *Zurn*'s logic in considering affidavits containing hearsay at conditional certification stage).  Accordingly, the Court will consider Plaintiffs' provided declarations in support of conditional certification even if, as Defendants argue, some statements in the declarations would not constitute admissible evidence at trial.

## 2. Conditional Certification

In support of their motion for conditional certification, Plaintiffs submitted their own declarations stating they were employed by Defendants at one or more of three Domino's pizza franchise stores in Texarkana, Arkansas, and Texarkana, Texas.  (ECF Nos. 17-6, 17-7).  Plaintiff Adkinson worked for Defendants from November 2016 until October 2018.  Plaintiff Wimley worked for Defendants from December 2015 until December 2018.  Plaintiffs state that during those times, they worked dual jobs as "in store" employees and delivery drivers.  While working in store, Plaintiffs state that they were paid $8.50 per hour but, when they left the store for a

delivery, they would clock out from the "in store" position and clock in as a delivery driver, thereby changing their pay rate to $5.25 per hour, plus a set rate of $1.05 per delivery (which was later increased to $1.10 per delivery after June 2018).

Plaintiffs state that Defendants required them and other delivery drivers to have and maintain automobiles for deliveries, and to incur all associated costs and expenses, including gasoline expenses, maintenance, insurance, depreciation, etc.  Plaintiffs also state that Defendants required them and other delivery drivers to keep and pay for cell phones and specific cell phone software for use in performing their job duties, thereby incurring data and usage costs.  Plaintiffs also state that Defendants required them and other delivery drivers to wear a uniform while working and that Defendants deducted from their wages to pay the cost thereof.  Plaintiffs state that they and other delivery drivers were not reimbursed by Defendants for any required business-related expense.

Defendants make several arguments that this case is inappropriate for collective treatment. First, they argue that Plaintiffs have failed to submit affidavits from any potential opt-in plaintiff but, rather, rely solely on Plaintiffs' separate declarations.  Although Defendants do not explicitly state as much, the implication seems to be that Plaintiffs failed to present evidence of similarly situated individuals who want to opt into the litigation.  (ECF No. 35, pp. 8-9).

District courts within the Eighth Circuit are split as to whether a plaintiff is required to present evidence that similarly situated individuals desire to opt into the litigation. *Compare Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (requiring showing), *with Kautsch*, 504 F. Supp. 2d at 689-90 (not requiring showing).  Multiple courts within the Western and Eastern Districts of Arkansas have held that such a showing is not required.  *Harrison v. Hog Taxi, LLC*, No. 5:19-cv-5025-TLB, 2019 WL 4280328, at *4 (W.D. Ark. Sept. 10, 2019); *Adams*

*v. United Cerebral Palsy of Cent. Ark., Inc.*, No. 4:16-cv-0930-JLH, 2017 WL 5659822, at *1 (E.D. Ark. Apr. 27, 2017); *Ford v. Townsends of Ark., Inc.*, No. 4:08-cv-0509-BSM, 2010 WL 1433455, at *5 (E.D. Ark. Apr. 9, 2010). The Court agrees and joins with the Arkansas federal district courts that have held that an FLSA plaintiff is not required to prove at the conditional certification stage that other similarly situated individuals wish to opt into the action. To hold otherwise would undercut the FLSA's broad remedial purpose by essentially requiring "plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs." *Harrison*, 2019 WL 4280328, at *4.

Considering the relevant standards and applicable factors listed above, the Court finds under the lenient standard of this notice stage that Plaintiffs have met their burden of demonstrating that they are similarly situated with putative members. Throughout the pleadings and their separate declarations, Plaintiffs established that they and all other potential plaintiffs were delivery drivers at one or more of Defendants' three pizza stores in Texarkana at all relevant times, and that they were all subject to the same alleged FLSA violations by not being paid proper minimum wage and overtime. Plaintiffs also established that they and the putative members were required by Defendants to maintain automobiles and cell phones for work purposes and to incur all related costs, without reimbursement from Defendants. Thus, Plaintiffs have made substantial allegations that they and the putative collective members were similarly situated and were the victims of a single decision, policy, or plan of Defendants.

Defendants also argue that this case is inappropriate for collective treatment because the determination of whether Defendants' reimbursement policies caused its delivery drivers' hourly

wages to fall below minimum wage depends on individualized, fact-driven inquiries regarding variation in payments and reimbursements among Defendants' employee delivery drivers. Specifically, Defendants argue that each delivery driver's vehicle usage will differ; that the hourly wages paid to the delivery drivers are inherently variable; and that vehicle-related reimbursement costs are variable.  Thus, Defendants argue that Plaintiffs and potential opt-ins will not rely on common evidence but, rather, will have to submit individualized evidence related to their vehicle usage, wages and expenses, and reimbursement.  In further support of their argument, Defendants submit Defendant Schroepfer's declaration, which refutes certain statements in Plaintiffs' declarations related to expense reimbursement.  Accordingly, Defendants conclude that this case is inappropriate for collective treatment and assert that Plaintiffs' motion must be denied.

"Arguments concerning the merits of the plaintiffs' claims and the impropriety of individualized inquiries in collective actions are inappropriate for consideration at the conditional certification stage." *Israsena v. Chalak M&M AR1 LLC*, No. 4:15-cv-0038-JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015).  "Simply identifying differences between the parties is not enough to defeat a motion for class notification at this notice stage." *Helmert v. Butterball, LLC*, No. 4:08-cv-0342-JLH, 2009 WL 5066759, at *4 (E.D. Ark. Dec. 15, 2009).  Even if these differences may affect Plaintiffs' ability to prove liability, the Court does not reach the merits of the parties' claims and defenses at the certification stage.  *Id.*  "So long as the plaintiffs provide evidence that the proposed class members were victims of the same policy or plan, conditional certification is appropriate." *Id.*  To the extent Defendants ask that the Court weigh the credibility of Plaintiffs' and Defendants' declarations to conclude that the proposed collective is not, in fact, similarly situated, the Court will not consider disputes over the factual accuracy of Plaintiffs' statements or weigh the credibility of Plaintiffs' submitted declarations at this stage. *Murray*, 2017

WL 514323 at *3.

As noted above, the Court is satisfied that Plaintiffs have made a modest showing that they and other delivery drivers are similarly situated in that, while employed as delivery drivers for Defendants in Texarkana during the relevant period, they were subjected to a common policy which deprived them of requisite minimum wage and overtime. Thus, this case will be conditionally certified as a collective action.

### B. Notice Plan

Once the Court has determined that potential opt-in plaintiffs may be similarly situated for the purposes of authorizing notice, the Court certifies the collective action and Plaintiffs send court-approved notice to potential class members. *See Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689-90 (W.D. Mo. 2007). "A district court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *See, e.g.*, *Murray*, 2017 WL 514323, at *4.

The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. The content and method of disseminating notice to potential collective members must be approved by the district court. *Littlefield*, 679 F. Supp. 2d at 1018. Although reasonable amendments to the proposed notice are permissible, the Court will not allow amendments that are "unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).

Plaintiffs ask the Court to: (1) approve the language of their proposed collective action notice and consent forms; (2) grant Plaintiffs leave to send the same through U.S. mail and text

message or, alternatively, via email to those who have no known cell phone number; (3) grant Plaintiffs leave to send a follow-up email twenty-one days after initial distribution; (4) approve the proposed text message for the electronic transmissions; (5) set a ninety-day period in which to distribute the notice and allow for opt-ins; and (6) direct Defendants to provide relevant contact information for potential opt-ins. Defendants raise objections taking issue with certain information in the notice itself; with certain contact information Plaintiffs request from Defendants; and with Plaintiffs' request that notice be provided by text message and email.

The Court will begin with the aspects of Plaintiffs' proposed notice plan that Defendants do not object to. The general form and language of the proposed collective notice and consent forms are approved, save for specific objected-to portions that will be addressed below. Plaintiffs' request to send their notice and consent forms to potential collective members through U.S. mail is approved. A ninety-day period in which to distribute notice and consent forms and to allow for opt-ins is reasonable and shall be approved. With that addressed, the Court will now take up the objected-to portions of the proposed notice plan.

### 1. Content of Notice and Consent Forms

Defendants present several objections to the proposed notice and consent forms. First, Defendants object to the notice's temporal scope, which contemplates notice being delivered to all delivery drivers employed by Defendants since January 23, 2016. Second, Defendants argue that the notice improperly displays the case caption, which gives the appearance of an official court pleading. Third, Defendants argue that the Court should remove from the notice a provision stating that it is against the law for the putative collective members to be discriminated or retaliated against for joining this suit. The Court will separately address each objection.

### a. Temporal Scope

Defendants take issue with the temporal scope of the proposed notice form's collective definition.  Plaintiffs propose that the notice form be sent to all delivery drivers employed by Defendants on or after January 23, 2016, the date this action was brought.  Defendants note that, assuming *arguendo* that Plaintiffs can show that Defendants willfully violated the FLSA,[3] the three-year limitations period for each putative collective member is measured retrospectively from the time the member files consent to join the action, not from the filing of this case.  Thus, Defendants suggest that the proposed notice could mislead its recipients into believing that they can opt into this case when they perhaps cannot.  Defendants suppose a hypothetical in which an individual worked for Defendants on or after January 23, 2016, but left Defendants' employ more than three years before filing a consent to join this case.  In that scenario, the individual would technically fall within the proposed notice's collective definition, but their claim would be time barred.  Defendants propose no alternative temporal scope.

Plaintiffs respond that the intricacies of the FLSA limitations period cannot be succinctly described in the notice form and that it is necessary to include a final cutoff date for the collective's time period.  Plaintiffs state that they chose the date this case was filed in order to include all potential opt-in plaintiffs.  Plaintiffs suggest that Defendants' request to change the notice's temporal scope is merely an attempt to bury the notice recipients in confusing legalese and thereby chill participation in this case.

The parties each raise valid points, but the Court declines to order modification of Plaintiffs' proposed temporal scope.  "At this stage in the litigation, judicial economy is served by

---

[3] FLSA claims are normally time barred if commenced more than two years after the cause of action accrues, but if the violations are shown to be willful, the limitations period is extended to three years. 29 U.S.C. § 255(a).  Collective members commence their claim when they file consent to join the suit.  29 U.S.C. § 256(b).  In this case, Plaintiffs allege willful violations of the FLSA, so the three-year limitations period applies.

conditionally certifying a larger, more inclusive class." *Cruthis v. Vision's*, No. 4:12-cv-244-KGB, 2013 WL 4028523, at *5 (E.D. Ark. Aug. 7, 2013). "The Court will address opt-in plaintiffs with time-barred claims if and when they join the litigation." *Cummings v. Bost, Inc.*, No. 2:14-cv-2090-PKH, 2015 WL 13655466, at *6 (W.D. Ark. Apr. 13, 2015).

### b. Case Caption

Defendants take issue with the header of the proposed notice, as it begins with the case caption. Defendants suggest that the notice should instead be formatted as a letter from Plaintiffs' counsel. Defendants argue that inclusion of the case caption gives the notice the appearance of an official court pleading, which could confuse its recipients. Defendants do not elaborate on how notice recipients may be confused by the case caption, but the Court presumes that Defendants believe that a notice with a case caption might give the appearance of judicial endorsement of the merits of this action. Plaintiffs maintain that this Court and other Arkansas federal courts have routinely authorized FLSA notice forms that contain the case caption and that any potential confusion is remedied by the inclusion of a disclaimer of judicial approval of the case.

The Court does not agree that the header of the notice, containing the full case caption, implies judicial endorsement of the merits of the action. Courts within the Western District of Arkansas have previously approved collective action notices with a header bearing the case caption. *See, e.g.*, *Jordan v. RHD, Jr., Inc.*, No. 2:16-cv-2227-PKH, 2017 WL 10128906, at *4 (W.D. Ark. Feb. 17, 2017); *Murray*, 2017 WL 514323, at *4. "[I]t is proper to include . . . basic identifying information" like a case caption, *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011), and "such a header helps to identify [the] notice as distinct from solicitation from a lawyer or junk mail." *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1024 (S.D. Iowa 2016). Accordingly, Plaintiffs' notice form may bear the case caption.

However, out of an abundance of caution, the Court agrees with Plaintiffs that a judicial disclaimer would prevent any potential confusion related to judicial endorsement. The Court cannot locate judicial disclaimer language in Plaintiffs' proposed notice form,[4] so the Court will require Plaintiffs to revise their notice form to include the following language in numbered paragraph 2: "The Court does not encourage or discourage participation in this case." *See Attaway v. Hydrostatic Oil Tools, Inc.*, No. 1:19-cv-1015-SOH (W.D. Ark. Aug. 12, 2019), ECF No. 20 (requiring an identically worded judicial disclaimer provision). This additional language will ensure that the notice "respect[s] judicial neutrality . . . [and] avoid[s] even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174.

### c. Anti-Retaliation Provision

Defendants take issue with a provision in the notice stating that the putative collective members cannot be discriminated or retaliated against for joining this action. Defendants argue that Plaintiffs have not alleged or shown that Defendants have or will retaliate against a current or former employee and, thus, such a provision is unnecessary. Plaintiffs respond that inclusion of the anti-retaliation provision will not prejudice Defendants if they do not intend to retaliate against any putative collective members who join the suit.

The potential of chilled participation in an FLSA action due to fear of retaliation by an employer is a recognized concern. *See Tinsley v. Covenant Care Servs., LLC*, No. 1:14-cv-0026-ACL, 2016 WL 393577, at *8 (E.D. Mo. Feb. 2, 2016) (mentioning the possibility that individuals may not have opted into a previously certified FLSA collective action because of fear of retaliation

---

[4] Plaintiffs state that a judicial disclaimer is found in "Section 2 of Plaintiffs' proposed notice." (ECF No. 43, p. 10). The proposed notice form does not feature delineated sections but does have numbered paragraphs. Numbered paragraph 2 merely informs the recipient of the existence of this case, states that the recipient may be a collective action member, and states that the notice form is meant to advise the recipient of their rights and of the procedure for participating in this suit. (ECF No. 17-1, p. 1). As far as the Court can tell, paragraph 2 contains no judicial disclaimer.

by their employer); *cf. Cruz v. Lawson Software, Inc.*, No. Civ. 08-5900 MJD/JSM, 2010 WL 890038, at *11 (D. Minn. Jan. 5, 2010) (stating, in an FLSA Rule 23 class certification context, that "employees are often reluctant to sue their employer based on fear of retaliation").  Courts have sometimes alleviated this concern by approving anti-retaliation provisions in an FLSA notice form.  *See Astarita v. Menard, Inc.*, No. 5:17-cv-6151-RK, 2018 WL 7048693, at *4 (W.D. Mo. Dec. 7, 2018) (approving anti-retaliation provision in FLSA notice form where the complaint made no claim or allegation of retaliation); *Dolgin v. Monsanto Co.*, No. 4:12-cv-1793-ERW, 2013 WL 4829218, at *4 (E.D. Mo. Sept. 10, 2013) (approving anti-retaliation provision in FLSA notice form despite the defendant's objection).

The Court finds that Plaintiffs' proposed anti-retaliation provision is appropriate to provide as much information as possible from which putative collective members "can make informed decisions about whether to participate" in this case.  *Hoffmann-La Roche*, 493 U.S. at 170.  Thus, the Court approves the proposed anti-retaliation provision for use in the notice form.  However, Defendants raise a fair point that this case does not involve claims or allegations of past retaliatory conduct.  To avoid the potential of misleading or confusing putative collective members into believing that Defendants have been accused of retaliatory conduct, Plaintiffs shall include the following language at the beginning of their anti-retaliation provision:  "This case does not involve claims or allegations that Defendants have retaliated against former or current employees."

## 2. Electronic Notice Dissemination

Defendants lodge a host of objections related to Plaintiffs' proposed electronic notice dissemination.  First, Defendants argue that text message and email notice is unnecessary and should be denied.  Second, Defendants argue that the Court should not allow potential opt-in plaintiffs to electronically sign and submit consent forms.  Third, Defendants argue that defense

counsel should be copied on any allowed email notice to the putative collective members. The Court will separately address these arguments.

### a. Whether to Allow Text Message and Email Notice

Defendants object to dissemination of notice through text messaging and email. Specifically, Defendants argue that notice dissemination via text message and email is unnecessary because Plaintiffs have not shown that notice cannot be effectively delivered through U.S. mail.

"The Court finds little basis for imposing a presumption that notice by mail should be the only approved method of providing notice absent a showing by the plaintiffs that personal mailing would be unreliable." *Simmons v. Enter. Holdings, Inc.*, No. 4:10-cv-625, 2011 WL 1304732, at *1 (E.D. Mo. Apr. 6, 2011). The better course is to determine what constitutes fair and proper notice based on the facts of each case. *Id.*

"Electronic communication is commonly utilized and is an appropriate, convenient, and efficient manner of communication with potential plaintiffs in FLSA actions." *Middleton v. Hempstead Cty., Arkansas*, No. 4:18-cv-4112-SOH, 2019 WL 3948106, at *4 (W.D. Ark. Aug. 21, 2019). The Court finds it reasonable and appropriate to allow Plaintiffs to send email notice to the putative collective members. Thus, email notice dissemination shall be allowed, and Plaintiffs' proposed email notice form is approved, with the caveat that Plaintiffs must add the judicial disclaimer language discussed above: "The Court does not encourage or discourage participation in this case." However, it would be needlessly repetitive to also allow notice dissemination via text message. Thus, Plaintiffs' request to also send notice via text message is denied.

### b. Electronic Consent Form

Plaintiffs also seek the Court's permission to allow potential opt-in plaintiffs to sign consent forms electronically through the Internet service RightSignature, the hyperlink to which would be included on the notice forms.  Defendants object to the use of electronically signed opt-in forms, arguing that requiring potential opt-in plaintiffs to return a physical consent form is sufficient.

The FLSA does not contain a physical signature requirement but, rather, requires only that opt-in consent be "in writing."  29 U.S.C. § 216(b).  "[W]e live in a time when all manner of . . . transactions are routinely cemented by electronic submission."  *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015); *cf.* Ark. Code Ann. § 25-32-107 (providing that an electronic signature may be used to sign a writing and has the same force and effect as a written signature).  Indeed, individuals today routinely enter into any number of agreements electronically using various websites, software packages, and mobile phone applications.  Thus, this Court and others within Arkansas have, of late, allowed electronic signatures from the RightSignature service in FLSA cases.  *See, e.g.*, *Harrison v. Hog Taxi, LLC*, No. 5:19-cv-5025-TLB, 2019 WL 4280328, at *6 (W.D. Ark. Sept. 10, 2019); *Attaway*, No. 1:19-cv-1015-SOH (W.D. Ark. Aug. 12, 2019), ECF No. 20; *McChesney v. Holtger Bros.*, No. 4:17-cv-0824-KGB, 2019 WL 118408, at *6 (E.D. Ark. Jan. 7, 2019).  This case is no different and the Court will allow Plaintiffs to utilize the RightSignature service as a means for opt-in plaintiffs to sign the consent documents.

This brings the Court to Plaintiffs' request that the Court authorize two follow-up emails to be sent to putative collective members who have not yet opted into the case.  One proposed follow-up email would be sent to potential opt-ins who have not responded to the mailed or emailed notice within twenty-one days of initial notice dissemination.  The other proposed follow-up would

19

be emailed by the RightSignature service thirty days after the initial notice dissemination to those who have not completed an electronic consent form.

Defendants have not objected to Plaintiffs' follow-up email requests.  However, the Court finds that one follow-up email is sufficient and that a second, sent only nine days later, is unnecessary.  Plaintiffs may send a follow-up email twenty-one days after initial notice dissemination to the potential opt-ins who have not responded to the mailed or emailed notice. There is no need for the RightSignature service to send yet another follow-up email thirty days after initial dissemination.

### c. Whether Defense Counsel Should be Copied on Emails

Finally, Defendants argue, without citing to authority, that defense counsel should be copied on any electronic correspondence that the Court allows Plaintiffs' counsel to send to putative collective members.  Plaintiffs argue that this request should be denied because it raises significant issues related to attorney-client privilege and would unduly burden Plaintiffs' counsel.

Even without wading into the quagmire of attorney-client privilege, the Court sees no reason to require that Plaintiffs copy defense counsel on the email notice dissemination sent to the putative collective members.  Defense counsel are familiar with the proposed notice forms, so Defendants know what will be emailed to the putative collective members.  Moreover, Defendants are not otherwise privy to notice dissemination facilitated by U.S. mail, and they have presented no argument or authority to persuade the Court that notice dissemination through electronic correspondence should be treated any differently.  Accordingly, the Court declines to require that defense counsel be copied on all email notice dissemination.

### 3. Contact Information

Plaintiffs ask the Court to order Defendants to provide the following information for each

individual meeting the collective definition, no later than seven days after approval of the notice plan: (1) names and any known aliases; (2) last known mailing addresses; (3) all known email addresses; (4) all known phone numbers. Defendants object to the extent that Plaintiffs seek email addresses and phone numbers, arguing that Plaintiffs have not demonstrated a necessity for that information that would justify invading the privacy of Defendants' former and current employees.

Once an FLSA action has been filed, the Court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way. *See Hoffmann-La Roche*, 493 U.S. at 170-71. To that end, the Court may authorize limited discovery in order to facilitate notice, including discovery related to the names and addresses of potential plaintiffs. *Id.* Thus, the limited discovery Plaintiffs seek "is a routine component of court-facilitated notice in FLSA collective actions," as employers are often directed to provide such information to improve the accuracy of the notice and minimize undue delay. *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 525-26 (N.D. Tex. 2014). Indeed, courts within the Eighth Circuit routinely order defendants to provide phone numbers and email addresses for putative FLSA opt-in plaintiffs. *See Cummings*, 2015 WL 13655466, at *6 (collecting cases).

As discussed above, the Court has found that notice shall be provided to potential collective members both by U.S. mail and email. Accordingly, Plaintiffs' request for production of information is well taken and will be granted insofar as it requests names, mailing addresses, and email addresses.

As for Defendants' argument that production of email addresses would violate its current and former employees' privacy rights, the Court recognizes that it is ordering the production of personal information. However, Defendants' concerns do not warrant denial of Plaintiffs' request for information because they can be adequately addressed in other ways. Although Defendants

have not done so, they could seek a protective order to protect said sensitive information.  If Defendants so desire, they are free to do so by filing a separate motion and providing a proposed protective order.  Absent such a motion, the Court orders Plaintiffs to appropriately safeguard all produced information for the putative opt-in plaintiffs and inform any third parties utilized in the dissemination of notice that they, likewise, must appropriately safeguard the information.

Defendants have not objected to the proposed time in which they would produce this information.  However, the Court finds that a fourteen-day deadline for providing the information is more reasonable than the seven days suggested by Plaintiffs.  Thus, Defendants shall provide to Plaintiffs the names, current and/or last known mailing addresses, and all known email addresses of any individual who meets the collective definition.  The list must be produced in a usable electronic format, such as Microsoft Word or Excel.  Defendants shall deliver this information to Plaintiffs' counsel within fourteen (14) days of the entry of this order.

### III. CONCLUSION

For the above-stated reasons, Plaintiffs' Motion for Conditional Certification, for Approval and Distribution of Notice and for Disclosure of Contact Information (ECF No. 17) is hereby **GRANTED IN PART AND DENIED IN PART**.  Accordingly, the Court holds as follows:

(1) This case is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2) The Court approves the proposed notice of right to join lawsuit form, once edited to comply with this order.

(3) The Court approves the proposed consent to join collective action form.

(4) The Court approves sending the notice packet to potential opt-in plaintiffs via U.S. Mail.

(5) The Court approves the use of email to provide notice to potential opt-in plaintiffs, as well as the proposed language of the notice email message, once edited to comply with this order.

(6) The Court approves the utilization of www.rightsignature.com as a means for potential opt-in plaintiffs to sign the consent documents.

(7) The Court approves the dissemination of one follow-up email, sent twenty-one days after initial dissemination to any potential opt-in plaintiff who has not responded to the initial notice.

(8) Defendants are hereby directed to produce the names, current and/or last known mailing addresses, and all known email addresses of any individual who meets the collective definition.  The list must be produced in a usable electronic format.  Defendants shall deliver this information to Plaintiffs' counsel within fourteen (14) days of the entry of this order, with the understanding that Plaintiffs' counsel is to treat this information as confidential.

(9) Plaintiffs shall have ninety (90) days from the date Defendants deliver the requisite contact information in which to distribute the notice and consent documents and to file signed consent forms of opt-in plaintiffs with the Court.

**IT IS SO ORDERED**, this 16th day of October, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

23